## DIVERSION LAKE CLUB et al. v. SELF.
### No. 9321.

Court of Civil Appeals of Texas.
San Antonio.
April 18, 1934.

Rehearing Denied May 9, 1934.

Templeton, Brooks, Napier & Brown, W. L. Matthews, and Swearingen & Miller, all of San Antonio, for appellants.

Ocie Speer, of Austin, and Marcus W. Davis, of San Antonio, for appellee.

FLY, Chief Justice.

This is a suit instituted by appellee, Norman W. Self, against Diversion Lake Club, a corporation, and W. C. Stegall, alleging that they were residents of Medina county, and against W. B. Lupe, Frost Woodhull, and Fred Frost, alleged to be residents of Bexar county. The suit was instituted in Bexar county. The ground of damages was that Stegall was an agent of the Diversion Lake Club and of Lupe, Woodhull, and Frost, and while acting within the scope of his employment and under instructions of Lupe, Woodhull, and Frost, who were alleged to be officers and members of the club, had fired upon and wounded appellee while the latter was on a road leading through the Diversion Lake Club property. The allegations are as follows:

"That the defendants, W. B. Lupe, Fred Frost and Frost Woodhull are now and have been for a long time, prior to the filing of this suit, officers of, stockholders in and members of said Diversion Lake Club, and are now, and have been for a long time, and especially on the date of plaintiff's injuries as hereinafter alleged, active in the conduct of the business and affairs of the said Corporation.

"That the said Diversion Lake Club was organized and chartered for the purpose of running and conducting a fishing and hunting place and a pleasure resort for the sole and only use and benefit of its members and stockholders, and now has, and did have, on the date plaintiff was shot and injured as hereinafter alleged, the defendant W. C. Stegall as its agent and custodian in charge of its properties, consisting of lands and improvements upon lands and the pretended claim to the exclusive use and ownership of what is known as Diversion Lake, at, over, near and upon the Medina River, a navigable stream. That said Lake and River contain navigable waters, which belong to the public, of which plaintiff is a member and was a member on the date he was shot and injured as hereinafter alleged.

"That the said W. C. Stegall, as agent and custodian of the properties of said Corporation, was instructed and advised by his said co-defendants and the officers of said Corporation to prevent plaintiff and the general public from going to and upon said Diversion Lake and fishing therein and thereupon, and, in pursuance of such instructions, and while said W. C. Stegall was discussing the matter with plaintiff and his right or not to resort to said Lake.for said purpose, and while acting within the line and scope of his duties, but acting excessively and wrongfully, shot and injured plaintiff as hereinafter alleged:

"That on or about January 16, 1932, while plaintiff was rightfully and lawfully in and upon the public road at and near said Lake and River and the lands of said Corporation,

the defendant W. C. Stegall, while acting for Diversion Lake Club, its officers, members and stockholders, and his co-defendants, in a wrongful effort to obey his said instructions and conduct the affairs of said Corporation, and while attempting to act within the line and scope of his employment and duty, as aforesaid, wrongfully, intentionally, unlawfully and negligently, without any provocation whatever on the part of plaintiff, wilfully shot and seriously and permanently injured the plaintiff, Norman W. Self, by using a shotgun, a deadly weapon, all directly and proximately caused by the wilful negligence of defendants and each of them as herein alleged.

"That just prior to and at the time said W. C. Stegall shot and injured plaintiff, and while acting for and on behalf of his co-defendants, with their knowledge and consent, he, the said W. C. Stegall, cursed and abused plaintiff, calling him a 'God damn liar,' all of which was unprovoked by plaintiff, and which abusive language so directed to plaintiff was likewise wilful, constituted negligence and unlawful conduct on the part of defendants and each of them, and directly and proximately caused and contributed to cause plaintiff's said injuries as herein alleged and consequent damage to him. That the shot from said shotgun, which was fired by said W. C. Stegall at and into plaintiff, lodged in and penetrated his face, right hand, breast, neck, throat and right shoulder, thereby causing him to suffer great and excruciating mental and physical pain and anguish and resulting in serious and permanent injury to each part of his body above mentioned. That by reason of said injuries plaintiff's throat and vocal organs are now and will be in the future seriously and permanently injured, and he is now and will be in the future unable to use his voice and talk in a natural way and without great pain and suffering, often rendering it impossible for him to talk at all when heated or exercised.

"Plaintiff further alleges that he verily believes, and so believing, charges it to be a fact that the said W. B. Lupe, Fred Frost and Frost Woodhull and each of them, as officers, stockholders and members of said Corporation, and while acting for it and themselves, colluded and conspired with the said W. C. Stegall to do plaintiff personal injury as herein alleged, and, as a result thereof, plaintiff verily believes, and, so believing, charges it to be a fact, that they wrongfully and negligently instructed and caused said W. C. Stegall to shoot and injure plaintiff as aforesaid, all in a wrongful and unlawful ef-

fort to run and conduct the affairs of said Corporation."

The Diversion Lake Club and Stegall filed a plea of privilege to be sued in Medina county, where they resided and where the tort was alleged to have been inflicted on the person of appellee.

Appellee filed a controverting affidavit in which it was reiterated that Lupe, Woodhull, and Frost were joint tort-feasors with Stegall and had instructed him, as their agent, to fire upon any one found on the grounds of the Diversion Lake Club. The parties pleading their privilege filed a general demurrer and general denial to the controverting affidavit, and testimony was introduced to endeavor to sustain the allegations of the controverting affidavit, and after hearing the testimony the court denied the plea of privilege and adjudged that Bexar County was the proper place of venue for the trial of the cause. This appeal has been perfected from that order.

The first proposition advanced by the appellants assails the sufficiency of the proof to sustain the allegation that the Bexar county residents were participants in the tort committed by Stegall in Medina county and that having so failed the court should have sustained the plea of privilege.

■ It is a well-established rule in Texas that when a plea of privilege is filed and a controverting affidavit is presented by the plaintiff in the case, the burden devolves upon plaintiff not only to allege, but to prove, the facts necessary to change the venue from the county where the tort was committed and where the parties pleading the privilege resided.

■ In this case it became necessary under the allegations for the plaintiff in the court below not only to show that Stegall was an agent of the Diversion Lake Club, but that he had been employed by Lupe, Woodhull, and Frost, as officers of the club, to guard the club grounds and lake from trespassers that might enter on it, and also that said officers had instructed him to use force upon the trespassers on the property of the club, and to use such force as might be necessary to accomplish the desired result. The mere fact that the Bexar county residents of the Diversion Lake Club had employed the agent to guard the property was not sufficient to make them guilty, jointly with Stegall, in committing the tort upon appellee. It became necessary to show that these officers were actively connected with the firing of the shot by having given the agent instructions

to use such force as might be necessary to prevent any one from entering on the grounds and to evict him therefrom. Not only did appellee fail to show that these parties had given any such instructions to Stegall, but, on the other hand, it was clearly shown that they had instructed him not to use force under any circumstances.

The directors and other officers of a corporation cannot be held personally or officially liable for the torts and wrongs committed by an employee without their knowledge or consent, and while it seems to be the contention of appellee that such is the law, no decision of any court has been cited that tends to sustain any such doctrine. If such a proposition could be sustained, it would be utterly subversive of the laws in regard to what constitutes principal offenders or any other grade of complicity in a crime and would destroy the purpose and efficiency for which corporations may be created. The testimony clearly showed that the Bexar county residents had no connection with the tort and by no stretch of the imagination could they be held responsible, individually, for his acts. The testimony tended to show that Stegall was not endeavoring to prevent a party from entering on the grounds, nor endeavoring to expel him from the grounds, but that the shot was fired outside of the grounds and upon a road over which appellee was traveling.

We sustain the first proposition.

The second proposition assails the form of the controverting affidavit in some particulars, and it is unnecessary to comment upon the criticisms that are made of such affidavit.

It is unnecessary to discuss the third proposition, as it is fully disposed of in our ruling on the first proposition.

We cite the following Texas authorities to sustain the ruling that the burden rested on the plaintiff not only to allege, but to prove, the facts that would give jurisdiction to the district court of Bexar county: Richardson v. D. S. Cage Co., 113 Tex. 152, 252 S. W. 747; Fort Bend Oil Co. v. Hurlbut (Tex. Civ. App.) 52 S.W.(2d) 292; T. P. Moor & Co. v. Indemnity Co. (Tex. Civ. App.) 280 S. W. 342; Oakland Motor Car Co. v. Jones (Tex. Civ. App.) 29 S.W.(2d) 861; Elliott Jones & Co. v. Production Co. (Tex. Civ. App.) 283 S. W. 246; Goad Motor Co. v. Yantis (Tex. Civ. App.) 4 S.W.(2d) 282.

The statute fixed the venue in Medina county by reason of the tort having been committed there by a man who resided in that county, and in order to change the plain intent of that statute it was necessary that there should be plain allegations that would give jurisdiction in another county and sufficient proof to sustain those allegations. Plaintiff has failed to comply with these rules.

The judgment will be reversed, and change of venue ordered to Medina county, and the clerk of the district court of Bexar county is hereby instructed to compile the necessary papers and send the record pertaining to the case to the district clerk of Medina county for filing therein.

Reversed, with instructions.